**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

RYAN J. KING,

              Plaintiff,

    v.

CITIBANK, N.A.,

              Defendant.

Case No. 1:26-CV-00258-TWP-MKK

**BRIEF OF DEFENDANT CITIBANK, N.A. IN SUPPORT OF
OPPOSED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant Citibank, N.A. ("Citibank") submits its Brief in Support of its Motion to Compel
Arbitration and stay Proceedings and respectfully requests this this Court compels Plaintiff Ryan
J. King ("Plaintiff") to arbitrate his claims against Citibank and stays this action until the arbitration
has concluded.

## I.      INTRODUCTION

In this action, Plaintiff complains about receiving calls from Citibank after Plaintiff
supposedly revoked his consent to receive calls from Citibank.  Based thereon, Plaintiff alleges
that Citibank violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and
Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA").  Regardless of their
merit or lack thereof, Plaintiff's claims must be arbitrated pursuant to the express terms of the
parties' binding arbitration agreement (the "Arbitration Agreement"), which covers any and all
disputes between the parties regarding Plaintiff's Citibank account.  By this Motion to Compel
Arbitration and Stay Proceedings ("Motion"), Citibank timely elects to arbitrate Plaintiff's claims
pursuant to the parties' Arbitration Agreement, which permits *either* party to elect arbitration of
claims against them *at any time*.

As demonstrated below, the Arbitration Agreement is a valid and enforceable agreement to arbitrate under both the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA") and South Dakota law (which governs here pursuant to the choice-of-law provision also contained in the Citibank Card Agreement governing the Citibank account at issue (the "Card Agreement")). In addition, the Arbitration Agreement completely encompasses the claims and all parties in this lawsuit. Specifically, the Arbitration Agreement broadly encompasses "[c]laims based on . . . statutory or regulatory provisions . . . [and] [c]laims made regarding past, present, or future conduct . . . ." (See Declaration of Kelly Booth (the "Booth Decl.") ¶¶ 5, 13 & Ex. A at 13 of 16; Ex. E at 12 of 14.)

Importantly, the FAA mandates a liberal policy favoring the enforcement of arbitration agreements and requires that any doubts regarding whether a dispute is subject to arbitration be resolved in favor of arbitration. Emphasizing this policy, the Supreme Court's decision in AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011), makes it absolutely clear that arbitration agreements must be enforced as written. To that end, courts have stated resoundingly that the FAA shall be construed broadly in favor of arbitration. Indeed, in Epic Systems Corp. v. Lewis, 584 U.S. 497 (2018), the United States Supreme Court reiterated the FAA mandate that arbitration agreements be enforced as written. This is consistent with other decisions from the United States Supreme Court, and other courts, that have confirmed that the FAA, which unquestionably applies here, "reflects an 'emphatic federal policy in favor of arbitral dispute resolution'"[1] and that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[2]

---

[1] KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011) (per curiam) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)).

[2] AT&T Mobility LLC, 563 U.S. at 344; see also Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp., 130 S. Ct. 1758, 1774 (2010) ("[u]nderscoring the consensual nature of private dispute resolution"

The Arbitration Agreement here is valid under applicable law, and Plaintiff's claims fall well within their scope.  Accordingly, Citibank respectfully requests that the Court enter an order compelling Plaintiff to arbitrate his claims and stay this action pending arbitration.

## II.        FACTUAL BACKGROUND

### A.        Plaintiff's Citibank Card Account

On or about July 17, 2003, Plaintiff opened a Citi® Dividend Credit Card account ending in 4140 (formerly ending in 5261, 5570, and 4290).  (See Booth Decl. ¶ 4.)  On or about September 3, 2015, Citibank mailed the Card Agreement associated with Plaintiff's Citi® Dividend Credit Card along with a cover letter.  (Id. ¶ 6.)  This cover letter outlined changes to the terms in the Card Agreement, including the right to opt-out of the Arbitration Agreement, and instructed that the new terms in the Card Agreement would be effective on November 7, 2015.  (See id. ¶¶ 6-8 & Ex. B at 1 of 4.)  The cover letter further provided that Plaintiff had the right to reject the Arbitration Agreement by November 7, 2015.  (Booth Decl. ¶¶ 9-10 & Ex. B at 2 of 4.)  The Card Agreement for the Account also provides that the Card Agreement takes effect once the card is used. (See Booth Decl. ¶¶ 5, 13& Ex. A at 5 of 15; Ex. E at 6 of 14.)

The Arbitration Agreement within the Card Agreement states, in pertinent part, that either party may elect mandatory binding arbitration as follows:

### ARBITRATION

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION.  IN ARBITRATION, DISPUTES ARE RESOLVED BY AN

---

is the notion that "parties are 'generally free to structure their arbitration agreements as they see fit'" (citations omitted)); Aneke v. Am. Express Travel Related Servs., Inc., 841 F. Supp. 2d 368, 373 (D.D.C. 2012).

ARBITRATOR, NOT A JUDGE OR JURY.  ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT.  THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.

(See Booth Decl. ¶¶ 5, 13. &  Ex. A at 12 of 16; Ex. E at 12 of 14.)  The Arbitration Agreement explains that either "[y]ou or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called 'Claims')."  (See Booth Decl. ¶¶ 5, 13 &  Ex. A at 13 of 16; Ex. E at 12 of 14.)  It additionally specifies that, "[i]f arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim."  (See Booth Decl. ¶¶ 5, 13 &  Ex. A at 13 of 16; Ex. E at 12 of 14.)  Lastly, the Arbitration Agreement states:

> All Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims.

(See Booth Decl. ¶¶ 5, 13 &  Ex. A at 13 of 16; Ex. E at 12 of 14.)

Plaintiff does not dispute that he opened and used his Citi® Dividend Credit Card for the Account.  (See Booth Decl. ¶ 12 & Ex. D.)  Citibank's records reflect that after receiving the Card Agreement, Plaintiff did not reject the Arbitration Agreement.  (See Booth Decl. ¶ 11 & Ex. C.)  Plaintiff thereby accepted the terms of the Card Agreement, including the Arbitration Agreement.  (See Booth Decl. ¶¶ 5, 13 & Ex. C at 5 of 16; Ex. E at 6 of 14)

### III.    ARGUMENT

**A.    Plaintiff's Claims Are Subject to Binding Arbitration.**

The purpose of the FAA is to ensure that agreements to arbitrate are fully enforceable as written.  See, e.g., AT&T Mobility LLC, 563 U.S. at 344; Epic Systems Corp., 584 U.S. at 525;

4

Stolt-Nielsen S.A., 559 U.S. at 683.  As such, the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'"  KPMG LLP, 565 U.S. at 21 (quoting Mitsubishi Motors Corp., 473 U.S. at 631).

Section 2 of the FAA mandates that a binding arbitration agreement in a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision "reflect[s] . . . the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms."  AT&T Mobility LLC, 563 U.S. at 339 (citations omitted); see Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987); Mitsubishi Motors Corp., 473 U.S. at 626–27.  The FAA applies to any contract affecting interstate commerce.  See, e.g., Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 276-77 (1995); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967).

Under the FAA, courts must compel arbitration when there is (1) a written arbitration agreement, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate that dispute.  See Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 687 (7th Cir. 2005).  A dispute within the scope of the agreement must be compelled to arbitration.  KPMG LLP, 565 U.S. at 19 ("[I]f a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.").  An arbitration agreement governed by the FAA, like the Arbitration Agreement here, is presumed to be valid and enforceable.  CK Witco Corp. v. Paper Allied Indus., Chem. & Energy Workers Int'l Union, Local 60-807, 272 F.3d 419, 421-422 (7th Cir. 2001) ("[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration [].") (internal

quotation omitted). "The party opposing arbitration must identify a triable issue concerning the agreement's existence or scope to preserve a trial." Bonzani v. Goshen Health Sys., 459 F. Supp. 3d 1139, 1147 (N.D. Ind. 2020) (citing Saturday Evening Post Co. v. Rumbleseat Press, Inc., 816 F.2d 1191, 1196 (7th Cir. 1987)).

As demonstrated below, the Arbitration Agreement applicable to the Account is a valid agreement to arbitrate, and Plaintiff's claims are within the scope of that agreement because he used the Account, and his claim regarding the Account relates to his relationship and dealings with Citibank. Accordingly, Plaintiff's claims must be arbitrated. Indeed, numerous courts nationwide have enforced Citibank's arbitration provisions. See, e.g., Schmidt v. Citibank (S.D.) N.A., 369 F. App'x 448, 449 (4th Cir. 2010); Du-Phillips v. Citibank, N.A., No. CV 25-00034 JAO-RT, 2025 WL 1615329, at *7 (D. Haw. June 5, 2025); Umana v. Citigroup, Inc., Case No. 0:18-cv-60977, Doc. No. 21 (S.D. Fla. Nov. 5, 2018); Scharrer v, Citibank, N.A., Case No. 8:18-ap-00119-RCT, Doc. No. 19 (M.D. Fla. June 21, 2018); Cusolito v. Citibank, N.A., No. 0:17-cv-60963-WPD, 2017 WL 8890662 (S.D. Fla. Oct. 6, 2017); Lenkowski v. Citibank, N.A., Case No.8:16-cv-03472-CEH-AAS, Doc. No. 24 (M.D. Fla. Apr. 18, 2017); Kardonick v. Citigroup Inc., No. 1:10-cv-23023-JLK, Doc. No. 68 (S.D. Fla. Mar. 25, 2013); Coppock v. Citigroup, Inc., No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013); Orman v. Citigroup, Inc., 2012 WL 4039850 (S.D.N.Y. Sept. 12, 2012); Daugherty v. Experian Information Solutions, Inc., 847 F. Supp. 2d 1189 (N.D. Cal. 2012); Eaves-Leonos v. Assurant, Inc., 2008 WL 80173, at *6-7 (W.D. Ky. 2008); Taylor v. Citibank USA, N.A., 292 F. Supp. 2d 1333 (M.D. Ala. 2003). The result should be the same here because the claims are clearly covered by the Arbitration Agreement.

**1.      The arbitration provision is a valid agreement to arbitrate.**

While the FAA exclusively governs the enforceability of arbitration provisions according to their terms, state law governs the determination of whether a valid agreement to arbitrate exists. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); Dinsmore v. Piper Jaffray, Inc., 593 N.W.2d 41, 44 (S.D. 1999) ("[T]he question of whether the parties entered into a valid agreement to arbitrate is a question for the court to determine applying state contract law principles."); Depuy Synthes Sales, Inc. v. Orthola, Inc., 953 F.3d 469, 478 (7th Cir. 2005) ("[T]he question whether an enforceable agreement to arbitrate exists, applying normal contract rules, is normally governed by state law [].").

Here, the Card Agreement contains a choice-of-law provision indicating that it shall be governed by federal and South Dakota law.  (See Booth Decl. ¶ 13 & Ex. E at 13 of 14.) Accordingly, courts regularly apply South Dakota law when determining the enforceability of Citibank's arbitration agreements.  See Du-Phillips, 2025 WL 1615329, at *7 (finding that South Dakota law should be applied to the Citibank arbitration agreement and noting that "[b]oth the place of performance and the subject matter of the credit card contract—the predicate relationship leading up to the Arbitration Agreement dispute—are in South Dakota, where Citibank is located."); Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182 (S.D. Cal. 2013), 928 F. Supp. 2d at 1193-94 (holding that South Dakota law applied under Citibank's choice-of-law provision and applicable choice-of-law test); Ackerberg  v. Citicorp USA, Inc., 898 F. Supp. 2d 1172, 1176-77 (N.D. Cal. 2012) (same); Daugherty, 847 F. Supp. 2d at 1193-95 (same); Guerrero v. Equifax Credit Info. Servs., Inc., No. CV 11-6555 PSG PLAX, 2012 WL 7683512, at *8 (C.D. Cal. Feb. 24, 2012)

(same); First Options of Chicago, Inc., 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally... should apply ordinary state-law principles that govern the formation of contracts.").

Here, there is no dispute Plaintiff opened and used the Account.  (See Booth Decl. ¶ 12 & Ex. D.)  Based on this fact, and under South Dakota law, the Card Agreement is binding.  See, e.g., S.D. Codified Laws § 54-11-9 ("[U]se of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . ."); see also Du-Phillips, 2025 WL 1615329, at *7 ("[U]nder South Dakota law, Plaintiff's act of using the credit card bound Plaintiff her to the terms of the Card Agreement, because a valid contract was formed between Citibank and Plaintiff."); McCormick v. Citibank, N.A., No. 15-46-JTC, 2016 WL 107911, at *4-6 (W.D.N.Y. Jan. 8, 2016) (holding that the use of an account constitutes assent to Arbitration Agreement); Carr v. Citibank, N.A., No. 15-CV-6993 (SAS), 2015 WL 9598797, at *3 (S.D.N.Y. Dec. 23, 2015); Clookey v. Citibank, N.A., 2015 WL 8484514, at *3-4; Snow v. Citibank, N.A., 2015 WL 799543, at *5-6; Guerrero, 2012 WL 7683512, at *6 (C.D. Cal. Feb. 24, 2012) ("Applying South Dakota law, the Court finds that Plaintiff entered into the arbitration agreement when he [ ] continued to use the card."); Cayanan, 928 F. Supp. 2d at 1199 (holding that "continued use of a credit [card] account" constitutes assent to arbitration under South Dakota law); Ackerberg, 898 F. Supp. 2d at 1176-77 (same).

Furthermore, despite having the right to reject the arbitration agreement, Plaintiff did not reject the Arbitration Agreement.  (See Booth Decl. ¶¶ 9, 11 & Ex. C.)  Courts interpreting South Dakota law—which governs the Arbitration Agreement—have enforced arbitration agreements with similar "opt-out" provisions when a party has failed to provide notice of its intent to exercise

8

a contractual right to reject the arbitration agreement.  See Du-Phillips, 2025 WL 1615329, at *12 (granting motion to compel arbitration and rejecting plaintiff's argument that the Citibank card agreement, which contained an opt-out provision, was unconscionable); Rahm v. TCF Nat'l Bank, No. CV 17-4018, 2017 WL 3605359, at *2 (D.S.D. Aug. 21, 2017) (granting a motion to compel arbitration following a finding that plaintiff failed to opt out of the arbitration agreement within the 60-day opt-out period); Schwalm v. TCF Nat'l Bank, 226 F. Supp. 3d 937, 944 (D.S.D. 2016) (same).

Accordingly, under both the FAA and governing South Dakota law, the Arbitration Agreement is binding and must be enforced.

**2.    Plaintiff's claims falls within the scope of the Arbitration Agreement.**

Once it is determined that the parties have entered into a valid agreement to arbitrate, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986); see also McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes). Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability such that "'[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" AT&T Tech., 475 U.S. at 650; accord Gore v. Alltel Communs., LLC, 666 F.3d 1027, 1034 (7th Cir. 2012) (endorsing an arbitration agreement that applies to claims "arising out of or relating to" a transaction because "such broad language necessarily creates a

presumption of arbitrability"). In order to rebut the presumption, the party resisting arbitration must show that the arbitration agreement does not encompass the claims at issue. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000). As a matter of federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

There can be no genuine dispute that Plaintiff's claims are governed by the Arbitration Agreement. The Arbitration Agreement extends to "all Claims . . . including Claims based on . . . statutory or regulatory provisions" and a "previous related Account" or Plaintiff's relationship with Citibank. (See Booth Decl. ¶¶ 5, 13 & Ex. A at 13 of 16; Ex. E at 12 of 14.) Here, Plaintiff alleges violations of the TCPA and FDCPA arising from Citibank's purported failure to honor Plaintiff's revocation of consent to receive calls and Citibank's purported act of calling Plaintiff repeatedly. (Compl. ¶¶ 26-35.) It is well settled that statutory claims, including claims under the TCPA, are subject to arbitration just like any other claims.[3] See Carr, 2015 WL 9598797, at *3 (enforcing Citibank's arbitration agreement and compelling arbitration of TCPA claim finding the :existence of consent to contact the plaintiff via telephone undeniably implicates the parties' relationship with each other"); McCormick, 2016 WL 107911, at *5 ("nothing in the text or legislative history of the TCPA ... suggest[s] that Congress intended TCPA claims to be non-arbitrable"); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("it is by now clear that statutory claims may be the subject of arbitration"); Mitsubishi Motors Corp., 473 U.S. at 628 (by agreeing

---

[3] See, e.g., Burris v. Discover Bank, No. 8:19-CV-01092, 2019 WL 9516076, at *3 (C.D. Cal. Sept. 20, 2019) (finding "arising out of or relating to ... the relationships resulting from this Account or any other dispute between [the parties]" in credit card arbitration agreement as "especially broad"); c.f., Day v. Persels & Assocs., LLC, No. 8:10-CV-2463-T-TGW, 2015 WL 413224, at *9 (M.D. Fla. Jan. 30, 2015) (finding language "arising from or relating to . . . our relationship" to be "unambiguously broad").

to arbitrate a statutory claim, a party "does not forgo the substantive rights afforded by the statute [but] submits to their resolution in an arbitral . . . forum."); Shearson/Am. Express, Inc., 482 U.S. at 226 ("The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims.).  Accordingly, because the Arbitration Agreement is valid under South Dakota law and Plaintiff's claims fall within the scope of the Arbitration Agreement, the Motion should be granted and arbitration compelled.

### 3.      Plaintiff refuses to arbitrate.

On Monday, May 4, Citibank asked if Plaintiff would stipulate to proceeding in arbitration. Plaintiff did not agree to stipulate and advised he would oppose the Motion.

### B.      The Action Should Be Stayed Pending Arbitration.

The FAA provides that a court, upon determination that an action before it is subject to an enforceable arbitration provision, "shall... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; see Smith v. Spizzirri, 601 U.S. 472, 476, 144 S. Ct. 1173, 1177, 218 L. Ed. 2d 494 (2024) (finding that the when a court "finds that a dispute is subject to arbitration" the court is obligated to stay the case, and this is "impervious to judicial discretion").  Accordingly, Citibank requests that the Court stay the action, including any pending discovery or disclosure deadlines, pending completion of arbitration between the parties.

### IV.      CONCLUSION

For all of the foregoing reasons, Citibank respectfully requests that the Court grant this Motion and stay this action pending completion of arbitration proceedings.

11

Dated:  May 6, 2026

Respectfully submitted,

***/s/ Dana E. Becker***

Dana E. Becker
MORGAN, LEWIS & BOCKIUS LLP
2222 Market St.
Philadelphia, PA 19103
Telephone:   +1.215.963.4628
Facsimile:   +1.215.963.5001
dana.becker@morganlewis.com

Jane Yu
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
Telephone:   +1.214.466.4000
Facsimile:   +1. 214.466.4001
jane.yu2@morganlewis.com

*Attorneys for Defendant Citibank, N.A.*

## PROOF OF SERVICE

I, Jane Yu, declare:

I am a citizen of the United States and employed in Dallas County, Texas.  I am over the age of eighteen years and not a party to the within entitled action.  My business address is 1717 Main Street, Suite 3200, Dallas, Texas 75201.  On May 6, 2026, I served a copy of the within document(s):

**BRIEF OF DEFENDANT CITIBANK, N.A. IN SUPPORT OF OPPOSED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Dallas, Texas addressed as set forth below.

Ryan J. King
3060 Montgomery Blvd.
Lapel, Indiana  46051                                    Pro Se
Tel.:  317.827.7109
Email:  ryan.king.j@gmail.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 6, 2026, in Dallas, Texas.

I declare under penalty of perjury under the laws of the State of Texas that the above is true and correct.

*/s/ Jane Yu*
Jane Yu

13